# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | | | |
|---|---|---|---|
| WILLIAM JOSEPH TAYLOR, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 2:25-CV-75-CRW |
| | ) | | |
| MICHELLE GILLIAM and | ) | | |
| A. MCCREADY, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM AND ORDER

Plaintiff is proceeding pro se in this action and alleges that Defendants Michelle Gilliam and A. McCready violated his First and Fourteenth Amendments in their individual capacities by interfering with his legal mail. [Doc. 5]. Defendants filed motions to dismiss [Docs. 39, 40], which the Court converted to motions for summary judgment [Doc. 57]. Defendants have also filed briefs in support of their motions. [Docs. 39, 40, 61]. Plaintiff has filed various responses [Docs. 41, 42, 43, 44, 53, 58, 60, 68] to Defendants' motions and has also filed other motions and/or supplements. In his additional filings, Plaintiff seeks to add "Sullivan jail employee Tucker Lane" as a Defendant [Docs. 48, 50, 54], seeks to add former Sullivan County Assistant District Attorney ("ADA") William Harper as a Defendant [Doc. 62], seeks to add conspiracy and retaliation claims, [Doc. 59, 63], and requests that subpoenas be issued for witnesses he wishes to call at trial [Doc. 67]. Plaintiff also filed a cross-motion for summary judgment [Doc. 58] and supplements [Doc. 66, 69], to which Defendants replied [Doc. 65].[1] For the reasons set forth below, Plaintiff's motions

---

[1] Defendants filed a Correction to Document 65 [Doc. 70], which seeks to clarify and correct a sentence identifying the wrong defendant.

[Docs. 48, 54, 58, 59, 62, 63, 67] are **DENIED**, Defendants' motions [Docs. 31, 36] are **GRANTED**, and this action will be **DISMISSED**.

## I.     MOTIONS TO AMEND

Plaintiff seeks to amend his lawsuit to add corrections officer Tucker Lane and former Sullivan County ADA William Harper as defendants, maintaining that he only learned of their participation in the alleged violation of his constitutional rights upon receiving Defendant Gilliam's declaration filed in support of her dispositive motion. In that declaration, Defendant Gillam states that she directed Mr. Lane to seize Plaintiff's mail at the request of ADA Harper. [Docs. 48, 54, 62]. Plaintiff also seeks to add claims of conspiracy and retaliation to his lawsuit based on these alleged actions [Doc. 59, 63].

However, the Court notes that Plaintiff's motions fail to comport with this Court's Local Rule requiring that a party seeking to amend his complaint "reproduce the entire pleading as amended" and "attach a copy" to his motion. *See* E.D. Tenn. L.R. 15.1. Failure to do so is grounds to deny the motion. *Id.* While the Court is mindful that Plaintiff is proceeding pro se and has afforded some leniency to him, the Court has already advised Plaintiff of this requirement on at least three occasions in denying prior attempts he has made to amend [Doc. 4, ¶ 8; Doc. 16, p. 4; Doc. 28, p. 1–2]. In fact, Plaintiff was specifically advised of this requirement when he previously attempted to add Tucker Lane[2] as a defendant. [Doc. 28, p. 1–2]. Moreover, because of Plaintiff's repeated failures to comply with applicable rules and the orders of the Court, the Court had specifically warned him that "any future attempts to amend his complaint that" did not comply

---

[2] The Court previously interpreted Plaintiff's handwriting to identify this Defendant as "Tucker Love" [Doc. 28]. However, it is now clear from the record that this is the same defendant that Plaintiff seeks to add as "Tucker Lane" in his more recent filings [Docs. 48, 50, 54].

with the Local Rules and the Court's prior orders would be "summarily denied" [*Id.* at 2]. Plaintiff did not heed the Court's warnings, and the Court is now left with no choice but to deny Plaintiff's requests to add additional claims and defendants. As such, Plaintiff's motions and supplements [Docs. 48, 54, 59, 62, 63] are **DENIED**.

## II.     MOTIONS FOR SUMMARY JUDGMENT

### A.     Standard

Summary judgment is proper when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To demonstrate that summary judgment is appropriate, the moving party must show that the nonmoving party cannot establish an essential element of his case for which he bears the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts which demonstrate that a genuine issue of fact remains for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. However, if no proof is presented, the Court cannot presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)). In other words, to successfully oppose a motion for summary

3

judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party must come forward with proof to support each element of his claim. The party cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.

### B. Summary Judgment Evidence

#### 1. Plaintiff's Proof[3]

The Court will first summarize the facts provided by Plaintiff. On September 16, 2024, Detective Michelle Gilliam interviewed Plaintiff at the Sullivan County Sheriff's Office ("SCSO") concerning mail Plaintiff previously received from the Chester County Criminal Court Clerk. [Doc. 1 p. 3–4]. At approximately 1:15 p.m. that day, Corrections Officer ("CO") Cooper escorted

---

[3] Because Plaintiff's complaint is sworn to under penalty of perjury, it is competent evidence for purposes of summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (providing a sworn complaint "carries the same weight" as an affidavit for purposes of summary judgment). However, the statements contained in Plaintiff's remaining filings [Docs. 41, 42, 43, 44, 46, 53, 58, 60, 64, 66] are not sworn to under penalty of perjury, and the Court cannot consider those allegations as evidence in resolving the pending summary judgment motions. *See Dole v. Elliot Travel & Tours, Inc*., 942 F.2d 962, 968–69 (6th Cir. 1991) (observing that a court may not consider unsworn statements in evaluating a motion for summary judgment).

4

Plaintiff from his cell to the mailroom, where Ms. McCready, the mailroom CO, "opened and inspected in [Plaintiff's] presence privileged/legal mail that [he] received from the Putnam County Criminal Court Clerk and Madison County Criminal Court Clerk." [Doc. 1, p. 4]. CO McCready gave Plaintiff copies of the legal mail, resealed the documents in their original envelopes, and advised Plaintiff that the originals would be stored in his personal property. *Id.*

Approximately fifteen (15) minutes later, Detective Gilliam arrived at Plaintiff's housing unit in possession of the documents CO McCready had just copied for Plaintiff. *Id.* The documents had been reopened. *Id.* Detective Gilliam advised Plaintiff that he would not receive any additional "privileged/legal mail until she personally reviewed the mail." *Id.*

Between September 16, 2024, and when he filed his complaint in April 2025, all of Plaintiff's incoming legal mail was withheld at Detective Gilliam's request, even though she does not have a warrant to justify seizing Plaintiff's mail. *Id.* This includes Plaintiff's "privileged/legal mail from the Haywood County Criminal Court Clerk and Monroe County Criminal Court Clerk at the beginning of October 2024." *Id.* Plaintiff is unsure what other privileged or legal mail has been withheld, but his criminal attorney told him that Detective Gilliam "has seized and withheld over (15) pieces of [his] incoming privileged/legal mail" since September 16, 2024. *Id.* at 4–5.

Plaintiff never received any notice that his incoming legal mail would be withheld, and he was not permitted the opportunity to oppose the decision. *Id.* at 4. When Plaintiff raised the issue through the SCSO grievance process, the response he received was that his "incoming privileged/legal mail was being held at the request of [D]etective Gilliam and the Sullivan County Sheriff's Office." *Id.* at 5.

### 2. Defendants' Proof

The Court now turns to the facts Defendants say the Court should consider in determining whether to grant them qualified immunity. Plaintiff has been incarcerated in the Sullivan County

Jail ("the Jail") since May 21, 2022, on pending charges of especially aggravated sexual exploitation of a minor, sexual exploitation of a minor, aggravated statutory rape, violation of sexual offender registry, evading arrest, resisting arrest, disorderly conduct, and criminal trespass. [Doc. 39-2, ¶ 10].

Defendant Michelle Gilliam is currently a lieutenant in Internal Affairs at the SCSO whose duties include investigating criminal matters originating within the Jail. [Doc. 39-2, ¶¶ 1, 6]. On or about September 16, 2024, Defendant Gilliam received a call from ADA William Harper requesting an inquiry into possible criminal activity being engaged in by Plaintiff. *Id.* at ¶ 11. ADA Harper advised Defendant Gilliam that his office had received a call from the Chester County Court inquiring about attorney William Joseph Taylor, who had requested criminal court case files on several different criminal defendants. *Id*. ADA Harper advised that Plaintiff was holding himself out as an attorney, and more specifically that he was posing as the attorney for other criminal defendants and requesting that their court files be sent to him. *Id*. Defendant Gilliam then began to investigate the matter as requested. *Id.*

Defendant Gilliam interviewed Plaintiff on September 16, 2024. [Doc. 39-2, ¶ 12]; *see also* [Doc. 40]. During the interview, Plaintiff admitted that he had represented himself as the attorney for other criminal defendants whose criminal records he had requested. *Id.* at ¶ 13. Plaintiff claimed that he did so in some cases to find material that he could use in defending himself on his pending criminal charges in Sullivan County. *Id.* at ¶ 14; *see also* [Doc. 40]. Plaintiff admitted that he was not an attorney and did not have permission from those whose files he requested either to ask for their records or to masquerade as their attorney. *Id.* at ¶ 15. Plaintiff stated that he held himself out as an attorney so that he could obtain the copies he requested for free, because he learned during a prior incarceration that court clerks do not charge attorneys for copies of court documents

they request for their clients. *Id.* at ¶ 16]. Plaintiff maintained that there was nothing wrong with what he was doing. *Id.* at ¶ 17. Defendant Gilliam informed Plaintiff that his actions were wrong, and that if he continued to engage in this behavior, his mail could and would be seized. *Id.* at ¶ 18.

When Defendant Gilliam reported the results of her interview to ADA Harper on September 16, 2024, ADA Harper requested that, moving forward, Defendant Gilliam seize mail addressed to Plaintiff that he received from courts and court clerks. *Id.* at ¶ 19. After talking to ADA Harper, Defendant Gilliam spoke with Tucker Lane, who was responsible for handling mail within the Jail, and Defendant McCready, a CO who worked under Mr. Lane. [Doc. 39-1, ¶ 9; Doc. 39-2, ¶ 20]. While employed as a CO for the SCSO, a large part of Defendant McCready's duties involved handling inmate mail. [Doc. 39-1, ¶¶ 7–8]. Defendant McCready advised Defendant Gilliam that Plaintiff had been receiving mail from court clerk's offices, and that it had been fairly consistent for quite a while. [Doc. 39-1, ¶ 9; Doc. 39-2, ¶ 20].

The Jail's Inmate Handbook provides that "[m]ail that violates the law or contains information about criminal activity will be kept and turned over to an investigator." [Doc. 39-2, ¶ 21]. On September 16, 2024, Defendant Gilliam seized four pieces of mail addressed to Plaintiff from the offices of court clerks in Madison, Haywood, and Wilkerson counties, believing she had probable cause to open this mail to see if it contained evidence of Plaintiff's fraudulent attempts to obtain information by posing as an attorney. *Id.* All four pieces of mail contained court documents related to third-party defendants where Plaintiff appeared to have held himself out as an attorney, so this mail was placed in evidence. *Id.*

Thereafter, Defendant Gilliam asked Tucker Lane and Defendant McCready to hold mail addressed to Plaintiff that had a return address for a court or court clerk, believing that she had probable cause to seize and open this mail to see if it contained evidence of a crime. [Doc. 39-1, ¶

7

9; Doc. 39-2, ¶ 22]. The mail addressed to Plaintiff from courts and court clerks decreased quite a bit after she made that request. [Doc. 39-1, ¶ 10].

Defendant McCready personally recalls holding back one piece of mail addressed to Plaintiff and believes it had a return address for a clerk's office. *Id. at* ¶ 11. Other than this one instance, all other mail addressed to Plaintiff that Defendant McCready handled was delivered to Plaintiff pursuant to Jail policy. *Id.* at ¶ 12. In the last three or so years of her employment, pursuant to Jail policy, Defendant McCready would open inmate mail, copy it, deliver the copies to the inmates, and store the originals. *Id.* at ¶ 8. If the mail was "legal mail"—mail from attorneys, courts, court clerks, or marked "legal"—Defendant McCready would arrange to meet with the addressee, where she would open the mail in front of the inmate, check for contraband, make a copy, give the copy to the inmate, and store the original. *Id.* Defendant McCready would not read the legal mail. *Id.*

Defendant McCready could not say definitively that additional mail addressed to Plaintiff was never held back by other Jail employees because she was not always the one handling the mail, such as when she was absent or on vacation, or on nights or weekends because she did not work those shifts. *Id.* at ¶ 11. Although her retirement was not effective until April 2025, Defendant McCready's last day of actual work was January 24, 2025. *Id.* at ¶ 11.

Defendant Gilliam received mail addressed to Plaintiff that had been held by the Jail pursuant to her request on two occasions: on or about October 4, 2024, and on or about March 11, 2024. Doc. 39-2, ¶ 22. On October 4, 2024, Detective Gilliam received six pieces of mail addressed to Plaintiff sent to the Jail from courts or court clerks. Doc. 39-2, ¶ 23. Based on the information available to her, Detective Gilliam believed she had probable cause to open this mail to see if it was evidence of a crime. *Id.* at ¶¶ 23, 24, 25. One piece of mail from a Grainger County Clerk and

another from a Knox County Clerk contained court documents for third-party defendants. *Id.* at 23. This mail was placed in evidence. *Id.* Another piece of mail was from a Hawkins County Clerk and actually contained court documents related to Plaintiff. *Id.* at ¶ 24. Once Detective Gilliam realized that these documents were not evidence of a crime, she copied the mail and delivered a copy to Plaintiff pursuant to normal Jail policy. *Id.*

Two other pieces of mail received on or about October 4, 2024, were from United States District Courts in Knoxville and Greeneville. *Id.* at ¶ 25. One contained instructions on how to file a federal lawsuit, and the other was a blank copy of a form complaint to be used to file a federal lawsuit. *Id.* Once she realized that these documents were not evidence of a crime, Defendant Gilliam copied them and delivered the copy to Plaintiff pursuant to normal Jail policy. *Id.*

Defendant Gilliam knows of only one occasion when mail from an attorney that was addressed to Plaintiff was opened by Jail personnel outside of Plaintiff's presence. *Id.* at ¶ 26. A letter from the Public Defender's Office in Augusta, Georgia addressed to "Attn: William Joseph Taylor, Sullivan County Sheriff's Office" was delivered to the Records Division of the Jail rather than being routed as inmate mail. *Id*. The employee in the Records Division who received the mail opened it, not realizing that William Taylor was an inmate. *Id.* The mail was delivered to Defendant Gilliam on October 4, 2025 as soon as that employee realized that it was for an inmate, and Defendant Gilliam then copied it and delivered the copy to Plaintiff in accordance with Jail policy.[4] *Id.*

On October 9, 2024, a Sullivan County Grand Jury returned a Presentment against Plaintiff on five counts of Impersonation of a Licensed Professional and five counts of Criminal

---

[4] This letter was sent by the Public Defender's Office and stated that the office had no record of ever representing William Joseph Taylor. [Doc. 39-2, ¶ 26].

Impersonation. [Doc. 39-2, ¶ 27; Doc. 39-4]. All these charges relate to Plaintiff's efforts to obtain information regarding third-party criminal defendants from the Chester County Circuit Court Clerk by posing as an attorney. [*See* Doc. 39-4, p. 5; Doc. 61-2, ¶¶ 6, 9]. These charges remain pending. [Doc. 39-2 ¶ 27].[5]

On or about March 11, 2025, ADA Harper advised Defendant Gilliam that Plaintiff was continuing to send out mail representing himself to be an attorney and/or a third-party criminal defendant in order to obtain court documents. [Doc. 39-2, ¶ 28]. On this date, Defendant Gilliam received two pieces of mail addressed to Plaintiff from court clerks. *Id.* at ¶ 29. Based on the information available to her, Defendant Gilliam believed she had probable cause to open the mail to see if it contained evidence of a crime. *Id.* at ¶¶ 29, 30. The first piece of mail from the Warren County Clerk's Office was deemed to be evidence of a crime and was placed in evidence. *Id.* at ¶ 29. The second piece of mail was from the United States District Court in Greeneville. *Id.* at ¶ 30. Once Defendant Gilliam opened this mail, she realized it was a blank copy of a complaint to be used to file a federal lawsuit rather than evidence of a crime. *Id.* at ¶ 30. As such, she copied the mail and delivered the copy to Plaintiff pursuant to normal Jail policy. *Id.* at ¶ 30.

Plaintiff has not received any additional mail from state court clerks since March 11, 2025, and Defendant Gilliam has not seized or opened any of Plaintiff's mail since that date. *Id.* at ¶ 32. Plaintiff has continued to receive mail from this Court since March 11, 2025, but such mail has not been seized or opened outside of Plaintiff's presence. *Id.* at ¶ 31.

---

[5] Plaintiff's next court date concerning these charges is July 31, 2026. *See* Sullivan County, *Online Court Records System*, https://sullivan.tncrtinfo.com/cmCaseList.aspx (Case Reference S79413) (last visited May 19, 2026). *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

At no time did Defendant Gilliam seize any of Plaintiff's mail to or from legal counsel. *Id.* at ¶ 35.  Moreover, Defendant McCready never seized Plaintiff's mail to or from legal counsel, and she never held back or opened such mail outside of Plaintiff's presence. [Doc. 39-1, ¶ 13].

The only mail belonging to Plaintiff that has been seized has been mail from the court clerks of Grainger County, Knox County, Warren County, Madison County, Haywood County, Hawkins County, Madison County, and Wilkerson County. [Doc. 39-2, ¶ 34]. Other than the instances of seizure described above, all mail addressed to Plaintiff was delivered pursuant to Jail policy. *Id.* at ¶ 33.

The charges pending against Plaintiff involving his communication with the Chester County Circuit Court Clerk's Office did not arise as a result of mail seized from Plaintiff by Defendants at the Jail, and no criminal charges have yet been brought against him based on the mail seized at the Jail.[6] However, Defendant Gilliam maintains Sullivan County District Attorney's Office intends to present the seized evidence to the Sullivan County Grand Jury and to seek additional criminal charges against Plaintiff based upon that evidence. [Doc. 61-2, ¶ 10].

## III.   DISCUSSION

### A.   Standard for Qualified Immunity

Defendants move for summary judgment based on qualified immunity.  Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established"; and (3) whether the official's

---

[6] The Presentment returned on October 9, 2024, is based on complaints from the Clerk of Court for Chester County, Tennessee to the Sullivan County District Attorney, not on mail seized. [Doc.61-2, ¶ 6].

actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). The Court may address these prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of overcoming the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Accordingly, officers are entitled to qualified immunity if they reasonably but mistakenly conclude that their actions were legal. *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). In this way, qualified immunity balances the need to hold public officials accountable for irresponsible exercises of power with the need to shield officials from liability when they perform their duties reasonably. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citing *Pearson*, 555 U.S. at 231); *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). In determining whether qualified immunity is appropriate, each individual defendant's liability and entitlement to the defense must be assessed individually. *Brown v. Knapp*, 75 F.4th 638, 647 (6th Cir. 2023).

A right is clearly established where, "at the time of the officer's conduct, the law was sufficiently clear such that every reasonable official would understand what he is doing is unlawful.'" *Wesby*, 583 U.S. at 63 (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, a "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). If no reasonably competent

12

officer would have taken the same action as the defendant, then qualified immunity should be denied; however, "if officers of reasonable competence could disagree on [the legality of the action], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Sixth Circuit summarized this "clearly established" law as follows:

> To show that the officers violated clearly established law, [Plaintiff] must make one of two showings. One is that this is an obvious case where general standards can clearly establish the answer, even without a body of relevant case law.

> ****

> That leaves the second method for showing that the officers violated clearly established law: "identify a case that put [the officers] on notice that [their] specific conduct was unlawful." To do so, [Plaintiff] must define the right with particularity "in light of the specific context of the case, not as a broad general proposition, and then identify "existing precedent" that "placed the . . . constitutional question beyond debate. This demanding standard requires [Plaintiff] to identify a case that addresses facts like the ones at issue here.

*Colson v. City of Alcoa, Tennessee*, 37 F.4th 1182, 1189 (6th Cir. 2022) (internal quotation marks and citations omitted). In *Colson*, the Sixth Circuit noted that "the Supreme Court has twice instructed us that, except for an obvious constitutional violation, we are to grant qualified immunity unless the plaintiff identifies a case with sufficiently similar facts." *Id.* at 1190 (citing *City of Tahlequah*, 595 U.S. at 12 and *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7–8 (2021)).

### B.      Application to Facts

Prisoners have a First Amendment right to send and receive mail. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Thornburgh v. Abbott*, 490 U.S. 401 (1989). They also possess a Fourteenth Amendment liberty interest in their written communication. *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds Thornburgh v. Abbot*, 480 U.S. 401, 407 (1989). Still, these important rights "must be balanced against the authority of prison officials to reasonably regulate and inspect a prisoner's mail for security purposes and to seize contraband." *Washington*

13

*v. CCA*, No. 3:13-CV-113, 2013 WL 664703, at *2 (M.D. Tenn. Feb. 22, 2013) (citations omitted); *see also Martinez*, 416 U.S. at 418 (noting an inmate's constitutional interests are "qualified of necessity by the circumstance of imprisonment"); *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) ("A prisoner's right to receive mail is protected by the First Amendment, but prison Officials may impose restrictions that are reasonably related to security or other legitimate penological objectives."). In striking this balance, courts afford greater protection to legal mail than non-legal mail, and greater protection to outgoing mail than incoming mail. *Sallier*, 343 F.3d at 874 (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)); *see also Thornburgh*, 490 U.S. at 413 ("The implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.").

Typically, prison officials may open and inspect a prisoner's "legal mail" only in the presence of the prisoner and "in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)). However, the Government may seize evidence for the purpose of proving a crime. *Warden v. Hayden*, 387 U.S. 294, 306 (1967)). In certain situations, seizures can be justified when circumstances render seizure the only practical means of detecting a certain type of crime. *Arizona v. Hicks*, 480 U.S. 321, 327 (1987). Mail, even sealed mail, shows who the mail is from and to whom the mail is going. Such cursory inspection, i.e., looking at an object already exposed in plain view, is not a search. *Id*. at 324–25. Where there is probable cause to believe that an item may be evidence of a crime or associated with criminal activity, the seizure of property in plain view "is presumptively reasonable." *Texas v. Brown*, 460 U.S. 730, 741–42 (1983).

Here, once Defendants Gilliam saw that Plaintiff's incoming mail was from court clerks, given her knowledge that Plaintiff had been holding himself out as a lawyer or another criminal defendant to obtain records, she had probable cause to believe that the mail enclosed would

14

constitute evidence of a crime and to seize it in order to make a final determination. There was no way to make that final determination without opening the mail to ascertain whether it contained a legitimate communication versus evidence of a crime. *See Wolff*, 418 U.S. at 575 (noting that "freedom from censorship is not equivalent to freedom from inspection or perusal"); *Martinez,* 416 U.S. 396, 412–13 ("Perhaps the most obvious example of justifiable censorship of prisoner mail would be refusal to send or deliver letters . . . containing other information concerning proposed criminal activity, whether within or without the prison."). The undisputed evidence before the Court is that mail that was reviewed and found not to be potential evidence of criminal activity was thereafter copied and delivered to Plaintiff in accordance with Jail policy. [Docs. 39-1, 39-2, ¶¶ 24, 25, 26, 30, 33].

The undisputed evidence further demonstrates that only one piece of mail which was sent to Plaintiff from an attorney was opened by Jail personnel outside of Plaintiff's presence, and that mail was opened by an employee in the Records Division. [Doc. 39-2, ¶ 26]. Once that employee realized the mail was intended for an inmate, the employee delivered it to Defendant Gilliam, who then copied it and distributed it to Plaintiff pursuant to Jail policy. *Id.* "Such a limited and isolated event does not rise to the level of a constitutional violation[,]" even assuming that Defendant Gilliam could be held responsible for the incident. *Wright v. Tennessee*, No. 3:24-CV-199, 2025 WL 1584702, at *4 (M.D. Tenn. June 4, 2025) (quoting *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659, at *2 (6th Cir. Aug. 4, 2023)).

As to Plaintiff's Fourteenth Amendment claim, the competent proof demonstrates that the mail addressed to Plaintiff which was temporarily seized because there was probable cause to believe that it would contain evidence of criminal activity, but it did not, was then copied and delivered to Plaintiff in accordance with Jail policy. *See, e.g.,* [Doc. 39-2, ¶¶ 24, 25, 30]. Therefore, Plaintiff was not deprived of his protected communications. To the extent Plaintiff had a liberty

15

interest in being present when his legal mail was initially opened, he has not presented evidence showing that he was deprived of an adequate post-deprivation remedy to address the issue. *See, e.g., Calhoun v. Morris*, No. 22-1795, 2023 WL 5009669, at *3 (6th Cir. July 31, 2023) (noting that even if the prisoner was deprived of a liberty interest when his mail was opened outside of his presence, "he presented no evidence that he did not have an adequate post-deprivation remedy in the form of the [facility]'s grievance process") (citing *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995)).[7]

In summary, the competent evidence demonstrates that (1) the only mail belonging to Plaintiff that has been seized is mail from court clerks containing evidence of Plaintiff's alleged criminal activity [Doc. 39-2, ¶ 34], and (2) neither Defendant seized any of Plaintiff's mail to or from legal counsel [Doc. 39-1, ¶ 13; Doc. 39-2, ¶ 35]. In turn, this means that none of Plaintiff's constitutionally protected mail has been seized. *See Sallier*, 343 F.3d at 873 ("The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by the court[.]").

Plaintiff has also alleged that Defendants infringed on his First Amendment rights because their conduct interfered with him filing this lawsuit. *See, e.g.,* [Docs. 58, 60]. In assessing this claim, the Court cannot ignore the fact that Plaintiff successfully filed this lawsuit and there is no competent evidence before the Court that any inspection of Plaintiff's protected legal mail deprived him of his right to access the courts or to communicate with counsel. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) ("There must be some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech.") (citing *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001)).

---

[7] In fact, Plaintiff attached grievances and responses addressing interference with his mail to his various summary judgment responses. *See* [Docs. 42, 43, 44, 46, 66].

16

Still, Plaintiff argues that summary judgment is inappropriate, claiming that *Sallier* places it "beyond debate" that Defendants violated his constitutional rights by opening his legal mail outside of his presence. *See, e.g.*, [Doc. 60 p. 11–12]. *Sallier* did hold "that mail from a court constitutes 'legal mail' and cannot be opened outside the presence of a prisoner who has specifically requested otherwise." *Sallier*, 343 F.3d at 877. However, there is no evidence that Defendant McCready opened any of Plaintiff's legal mail, making this argument inapplicable to her. At the same time, Defendant Gilliam did open some of Plaintiff's mail outside of his presence for purposes of determining whether it contained evidence of criminal activity. The record offers no explanation as to why Defendant Gilliam did not inspect Plaintiff's "legal mail" in his presence while conducting her investigation. But even assuming Defendant Gilliam violated Plaintiff's First Amendment rights by denying his request to be present when his legal mail was opened, the Court finds that *Sallier* is not instructive because that case did not involve an inmate being suspected of using the prison's mail system to engage in criminal activity under the guise of receiving constitutionally protected legal mail. Thus, Plaintiff has not identified any existing precedent with facts sufficiently similar to this case which would have placed this constitutional question beyond debate. *See, e.g., Colson*, 37 F.4th at 1189. Because a reasonable officer could believe that it was lawful to open Plaintiff's actual legal mail because she had probable cause to believe that the mail was not legal mail but instead contained evidence of criminal activity, Defendants are entitled to qualified immunity. *See, e.g., City of Tahlequah*, 595 U.S. at 12.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motions to amend [Docs. 48, 54, 59, 62, 63] are **DENIED**. Additionally, as addressed above, the Court finds that Defendants are entitled to qualified immunity. Accordingly, Defendants' motions for summary judgment [Docs. 31, 36] are

17

**GRANTED**, and Plaintiff's summary judgment motion [Doc. 58], as supplemented [Doc. 66], is

**DENIED**.  Any remaining motions [Doc. 67] are **DENIED** as moot.

　　　　**SO ORDERED:**

　　　　　　　　　　　　　　/s/Cynthia Richardson Wyrick
　　　　　　　　　　　　　　United States Magistrate Judge

18